# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**ROBERT LEE BARNES,**

      Petitioner,

v.                                                                      **Case No.  2:13cv281**

**HAROLD W. CLARKE, Director,**
**Virginia Department of Corrections**

      Respondent.

## REPORT AND RECOMMENDATION

Before the Court is the *pro se* Petitioner Robert Lee Barnes' ("Barnes") Petition for a Writ of *Habeas Corpus* filed pursuant to 28 U.S.C. § 2254, ECF No. 1, and the Respondent's Motion to Dismiss ("the Motion), ECF No. 4, to which Barnes filed an opposition, ECF No. 8. The Motion was referred for disposition to the undersigned United States Magistrate Judge ("undersigned") pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. After reviewing the briefs, the undersigned disposes of the Motion on the papers without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J). For the following reasons, the undersigned finds that Barnes' claims are without merit, and therefore, **RECOMMENDS** the Respondent's Motion to Dismiss, ECF No. 4, be **GRANTED**, and the Petition for a writ of *habeas corpus*, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE.**

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

On September 1, 2009, in the Circuit Court of the City of Portsmouth ("the trial court"), Barnes pled guilty to first-degree murder, statutory burglary, attempted rape, abduction, and aggravated sexual battery. After accepting his guilty plea and the plea agreement between Barnes and the Commonwealth of Virginia, on February 18, 2010, the trial court imposed the following sentence of active incarceration: thirty-eight (38) years for first-degree murder, two (2) years for statutory burglary, and two (2) years for aggravated sexual battery, to run consecutively for a total of forty-two (42) years of active incarceration.[2] Under the plea agreement, the Commonwealth dismissed the charge of capital murder and agreed to a maximum sentence of forty-two (42) years of active incarceration, in exchange for Barnes' guilty plea and stipulation that he acted alone in the commission of first-degree murder, attempted rape, aggravated sexual battery, abduction and statutory burglary. During the guilty plea hearing, the Commonwealth introduced into evidence two photographs of the crime scene, an autopsy report, and a statement by Barnes to police officers. The Commonwealth summarized the evidence against Barnes as follows, and Barnes agreed that the Commonwealth could have presented such evidence if the matter proceeded to trial:[3]

> On April 10, 2008 at four ten p.m. Chris Short, the stepfather of Meghan Landowski, arrived home at 21 Roberts Court West in the City of Portsmouth, Virginia. He opened the front door and saw a large pool of blood which covered a portion of the living room, the dining room and the kitchen. In the center of the

---

[1] This background was compiled using the various state court records received from the Circuit Court of the City of Portsmouth on September 12, 2013, from the Court of Appeals of Virginia on August 22, 2012, and from the Supreme Court of Virginia on September 9, 2013.

[2] Cumulatively, the trial court sentenced Barnes to one-hundred and forty-eight (148) years of incarceration on all charges, with one-hundred and six (106) years suspended for a term of twenty-five (25) years of supervised probation.

[3] This summary is taken directly from the transcript of the guilty plea hearing, during which Commonwealth Attorney Earle C. Mobley summarized the evidence against Barnes. Tr. Plea at 11-20 (Sept. 1, 2009).

pool of blood was his daughter, Meghan Landowski, at that time sixteen years old. She was laying [sic] face down covered in blood from her head to her feet. The autopsy would reveal her neck was slashed, she suffered over forty stab wounds, of which twelve would be described as postmortem.

She was unclothed from her waist to her ankles, her shirt and undergarments were soaked with blood, her mouth was covered with tape, her ams [sic] were bound behind her back with tape and Meghan's elbows almost touched the tape was so tight. The father observed a large gaping wound to her neck and puncture wounds to her back. He knew immediately that his daughter was dead. He called 911 and the Portsmouth police responded immediately.

Once on scene the house and yard were sealed off, Detective Funkhouser and Sergeant Steve Goldman began the investigation. Detective Carl Sequiera assigned to the forensics unit was called to the scene to begin gathering evidence. Detective Sequiera photographed the body documenting its location between the kitchen and dining room. He would photograph and make note of the blood splatter in the kitchen; he would note the blood covered an area approximately ten by ten feet on the floor. [At this time, the Commonwealth offered and the Court accepted into evidence without objection from Barnes two photographs of the crime scene that were subsequently sealed in the court record.]

Furthermore, Detective Sequiera would notice and make note and document that there was only one set of footprints in the blood which he observed in the area where Meghan Landowski was found. He would also prepare the body to be transported to the medical examiner's office in Norfolk, Virginia.

Once the body was removed, he and two additional forensics technicians, Terri McCurdy and Allison Coles, began processing the house for evidence. It took several days for them to collect almost four hundred pieces of evidence. It was determined that entry into the house was made by opening a window. The area surrounding the window was processed for fingerprints, one latent print was lifted from this area.

Several other pieces of evidence were collected which proved to be material to in the prosecution of this case, these included the following: One, semen collected from a blanket in an upstairs bedroom; two, DNA/blood from the serrated edge of a spent spool of packing tape; and, three, DNA/blood from a knife found in the kitchen sink was later determined to be the murder weapon; and, four, DNA/blood from the inside door handle to the front door.

The fingerprint lifted from the point of entry and the DNA derived from the semen, the serrated edge of the spool of tape, the knife in the kitchen sink and the front door handle to the house were submitted to known data banks with negative results. These samples were also compared by the NCIS forensics lab, it was determined that the four DNA samples all came from the same person.

3

On June 11, 2008, Special Agent Dana Shut of NCIS provided Detective Funkhouser with a DNA profile of the defendant. After following hundreds of leads and interviewing scores of persons of interest, it was learned that Robert Barnes was friends with Meghan Landowski, he also fit the DNA profile developed by the NCIS forensic lab.

On September 25, 2008, Detective McDaniel confirmed that Barnes was a student at Churchland High School in Portsmouth, Barnes was sixteen years old. Seven days later Detective McDaniel went to Churchland High School and met with Barnes. Barnes confirmed he knew Meghan Landowski, that they lived in the same neighborhood and he denied any knowledge of the murder.

McDaniel requested a sample of DNA from Barnes, he stated he would get back with him after talking to his mother. The following day Barnes called Detective McDaniel and they arranged to meet on October 3, 2008. When they met on the 3rd, Barnes provided McDaniel with a piece of gum which had apparently been chewed, Barnes told McDaniel he could get the DNA from the gum.

He sent the gum to the forensics lab of NCIS on October 22, 2008, Detective McDaniel received word from the forensics unit of NCIS that the submitted sample of DNA was that of a female.

On October 23, 2008, Detective McDaniel went to Churchland High School to talk to Robert Barnes again. The detective asked Barnes if he would go downtown with him to discuss the case, Barnes agreed. Detective McDaniel contacted Robert Barnes' mother, Ebony Barnes, and she agreed to meet with Detective McDaniel and her son.

Later that morning with Ebony Barnes present at the Detective Bureau with her son, Detective McDaniel began interviewing Robert Barnes. In the interview Barnes admitted to committing the following acts: One, he admitted that he gained entry through the window by pushing it open and crawling through it; he admitted taking Meghan's skirt and underwear off; he admitted touching Meghan's vagina with his tongue; he admitted attempting to having intercourse with her; he admitted binding her arms with packing tape and taping her mouth shut; he admitted taking her downstairs where Meghan tried to get away and she suffered defensive wounds to her hands and arms and that is the place where she was stabbed to death.

The evidence would further show that the attempted rape, the aggravated sexual battery and the abduction were all accomplished without the consent of the victim.

Detectives Funkhouser and McDaniel would both testify as to the identity of Robert Barnes, the defendant present today with his attorneys, Woodward and Morecock.

There would be no physical evidence that would suggest anyone else was present or took part in the commission of these crimes. The DNA evidence contained in the semen from the blanket, the blood on the serrated edge of the spool of tape, the knife located in the kitchen sink and the blood located on the inside handle of the front door would be compared with a known sample of Robert Barnes' DNA and would be determined to be a match. The latent print from the point of entry would be compared with a known print of Robert Barnes and it also would be determined to be a match.

The medical examiner, Dr. Gunther, would opine that the knife recovered from the kitchen sink would be consistent with the infliction of the stab wounds Meghan suffered; he would further opine that the cause of death was stabbing. [At this time, the Commonwealth offered and the Court accepted into evidence without objection from Barnes a copy of the autopsy report and the entire statement that Barnes gave to Detective McDaniel as transcribed by a court reporter.]

Barnes directly appealed his conviction to the Court of Appeals of Virginia and argued that the trial court abused its discretion in sentencing him to forty-two years of incarceration, the maximum active time allowed under his plea agreement. On September 8, 2010, the Court of Appeals denied Barnes' petition for appeal. ECF No. 6 Ex. 2. Subsequently, on January 19, 2011, the Supreme Court of Virginia refused Barnes' petition for appeal from the Court of Appeals, and Barnes conviction became final on April 19, 2011 when he failed to petition the U.S Supreme Court for a writ of *certiorari*.

On February 22, 2012, Barnes filed a state *habeas corpus* petition with the trial court. In it, Barnes alleged the following:

I. Petitioner was denied effective assistance of counsel when counsel failed to file a motion to suppress evidence obtained (directly and indirectly) from an unreasonable seizure of his person on October 23, 2008 in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

II. Petitioner was denied effective assistance of counsel when counsel failed to file a motion to suppress Petitioner's DNA that was obtained on October 23, 2008. The DNA was

obtained in violation of Article 1, section 10, of the Virginia Constitution, as well as the Fourth and Fourteenth Amendments of the United States Constitution.

III.    Petitioner's Fifth, Six, and Fourteenth Amendment rights of the U.S. Constitution were violated when his counsel denied him the right to testify at the preliminary hearing of December 3, 2008.

IV.    Petitioner was denied effective assistance of counsel when counsel failed to file suppression motions to litigate claims I and II of this Petition.  Petitioner should be allowed to withdraw his guilty plea.

On June 27, 2012, the trial court denied and dismissed his *habeas* petition.  Barnes appealed this decision and presented these four claims to the Supreme Court of Virginia, which refused his petition for appeal on January 16, 2013, and denied his request for a rehearing on March 7, 2013. This decision became final on June 5, 2013 when Barnes did not appeal to the U.S. Supreme Court.

On April 26, 2013,[4] Barnes filed this federal *habeas* petition, ECF No. 1, his first section 2254 petition in this Court, alleging the following claims of ineffective assistance of counsel:

a)    Counsel failed to file a motion to suppress Petitioner's coerced confession, as well as the direct and indirect fruits derived therefrom, that was obtained on October 23, 2008 in violation of the Fifth and Fourteenth Amendments of the United States Constitution.

b)    Counsel failed to file a motion to suppress Petitioner's DNA that was obtained on October 23, 2008 from an unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments of the United States Constitution, because Petitioner's "consent" to search was unspecific, equivocal, and ambiguous.

---

[4] The undersigned uses the date Barnes placed his Petition in the prison mailing system.  *See* ECF No. 1 at 14; *see also Houston v. Lack*, 487 U.S. 266, 276 (1988) (articulating the "prison mailbox rule").

6

   c) Counsel failed to file a motion to suppress the direct and indirect evidence that was

      obtained on October 23, 2008 from an unreasonable seizure of Petitioner's person in

      violation of the Fourth and Fourteenth Amendments of the United States Constitution,

      namely, his fingerprints, a written statement, drawn pictures of the crime scene, and a

      DNA sample.

ECF No. 1 Ex. 1 at 2-5. The Virginia Attorney General, on behalf of the Respondent, submitted a Motion to Dismiss, Rule 5 Answer, brief in support of the Motion to Dismiss, and Roseboro Notice on August 14, 2013. ECF Nos. 4-7. Barnes responded to the Respondent's Motion to Dismiss on September 6, 2013, ECF No. 8. The Respondent has not replied, and the time to do so has passed. Therefore, the Motion is ripe for disposition.

## II. PROCEDURAL ISSUES

### A. Statute of Limitations

Barnes filed his *habeas* petition in this Court before the applicable statute of limitations deadline passed, and therefore it is timely. Section 2254 petitions are subject to a one-year statute of limitations. 28 U.S.C. § 2244(d)(1). Generally, this period begins to run from "the date on which the judgment became final by the conclusion of direct review." 28 U.S.C. § 2244(d)(1)(A). However, in calculating the limitations period, the Court excludes, or tolls, the time during "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim" is pending. 28 U.S.C. § 2244(d)(2).

Barnes' conviction became final on April 19, 2011 upon the conclusion of direct review. As a general matter, under 28 U.S.C. § 2244(d)(1), Barnes had until April 19, 2012 to file his *habeas* petition in this Court. However, this time period was tolled from February 22, 2012, when Barnes filed his state *habeas* in the trial court, to June 5, 2013, when the Virginia Supreme

Court's refusal of his appeal became final. *See* Sup. Ct. R. 13:1. Barnes was will within the statute of limitations deadline when he filed this Petition on April 26, 2013. ECF No. 1 at 14.

## B. Exhaustion

The Respondent concedes that Barnes exhausted the *habeas* claims in the instant Petition by presenting them to Supreme Court of Virginia, the highest state Court. *See* ECF No. 6 at 5 (citing *Burket v. Angelone*, 28 F.3d 172, 201 n.11 (4th Cir. 2000) (in order to exhaust state remedies petitioner must have presented claims to the state's highest court)). Section 2254 petitions challenge a state's custody of a prisoner "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "In the interest of giving the state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing, a state prisoner must exhaust all available state remedies before he can apply for federal *habeas* relief." *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998) (citing 28 U.S.C. § 2254(b); *Matthews v. Evatt*, 105 F.3d 907, 910-11 (4th Cir. 1997)). "To exhaust state remedies, a *habeas* petitioner must fairly present the substance of his claim to the state's highest court." *Id.* (citing *Matthews*, 105 F.3d at 911). In Virginia, that court is the Virginia Supreme Court. "The burden of proving that a claim is exhausted lies with the *habeas* petitioner." *Id.* (citing *Mallory v. Smith*, 27 F.3d 991, 994 (4th Cir. 1994)).

The Court agrees that Barnes exhausted his state remedies as to the three claims in the instant Petition and will therefore reach the merits of those claims. Claim A—that trial counsel was ineffective for failing to file a motion to suppress Petitioner's coerced confession, as well as the direct and indirect fruits derived therefrom, that was obtained on October 23, 2008—was presented as claim four in the state *habeas* petition. *See* ECF No. 6 Ex. 4 at 11-14. Claim B— that trial counsel was ineffective for failing to file a motion to suppress Petitioner's DNA that

was obtained on October 23, 2008 from an unreasonable search and seizure, because Petitioner's "consent" to search was unspecific, equivocal, and ambiguous—was presented as claim two in the state *habeas* petition. *See id.* at 8-9. Lastly, Claim C—that trial counsel was ineffective for failing to file a motion to suppress the direct and indirect evidence that was obtained on October 23, 2008 from an unreasonable seizure of Petitioner's person, namely, his fingerprints, a written statement, drawn pictures of the crime scene, and a DNA sample—was presented as claims one and five in the state *habeas* petition. *See id.* at 5-8, 11-14. Accordingly, the Court will address the merits of Barnes' three claims.

### III. STANDARD OF REVIEW

The Supreme Court of Virginia refused Barnes' *habeas* appeal from the trial court in a two sentence order: "Upon review of the record in this case and consideration of the argument submitted in support of the granting of an appeal, the Court is of the opinion there is no reversible error in the judgment complained of. Accordingly, the Court refuses the petition for appeal." This constitutes an "adjudication on the merits," and the parties do not appear to otherwise contest this characterization. *See Bell v. Jarvis*, 236 F.3d 149, 163 (4th Cir. 2000) (*en banc*) ("[Courts] must uphold the state court's summary decision unless [their] independent review of the record and pertinent federal law persuades [them] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented.") (citations omitted); *see also Renoir v. Virginia*, No. 7:99cv580, 2001 WL 34801301, at *8 n.7 (W.D. Va. July 31, 2001) (holding Virginia Supreme Court adjudicated claim on the merits where it found "no reversible error in the judgment complained of").

The Court reviews this 2254 *habeas* petition under the daunting standard set out in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The significant burden on 2254 petitioners cannot be understated. AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, --- S. Ct. ---, No. 12-414, 2013 WL 5904117, at *4 (U.S. Nov. 5, 2013). When a state court addresses the merits of a claim that is raised in a 28 U.S.C. § 2254 petition, the Court may not grant federal *habeas* relief on claims of legal error by the state court unless, *inter alia*, the state court decision is contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011). The Court independently reviews whether that decision satisfies either standard. *See Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

A state court decision is "contrary to" clearly established federal law if the state court "arrives at a conclusion opposite to that reached by th[e U.S. Supreme] Court on a question of law or if the state court decides a case differently than th[e U.S. Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413. As to whether a state court decision is an "['objectively'] unreasonable application" of clearly established federal law, the state court must "identif[y] the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of the prisoner's case." *Id.* at 410. Ultimately, though, "state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is *firmly convinced* that a federal constitutional right has been violated." *Id.* at 389 (emphasis added). It is this Court's obligation to focus "on the state court

decision that previously addressed the claims rather than the petitioner's freestanding claims themselves." *McLee v. Angelone*, 967 F. Supp. 152, 156 (E.D. Va. 1997).

Federal *habeas* relief is precluded, "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. C.t at 786. "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Id.* (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)). In other words, "AEDPA prohibits federal habeas relief for any claim adjudicated on the merits in state court, unless one of the exceptions listed in § 2254(d) obtains." *Premo v. Moore*, 131 S. Ct. 733, 739 (2011). Here, as in *Premo*, the relevant exception is "permitting relitigation where the earlier state decision resulted from an 'unreasonable application of' clearly established federal law." *Id.*; 28 U.S.C. § 2254(d)(1).

Generally, to have been entitled to *habeas* relief in state court for ineffective assistance of counsel claims under the Sixth Amendment, Barnes had to show both that his defense counsel provided deficient assistance and that he was prejudiced as a result. *Strickland v. Washington*, 446 U.S. 668, 700 (1984). First, to establish deficient performance, Barnes was required to show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688-89 (holding that there is a strong presumption that trial counsel provided reasonable professional assistance). Second, Barnes was also required to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 687, 693-94 (holding that counsel's errors must be "so serious as to deprive the defendant of a

fair trial," and that the petitioner must "show that the errors had some conceivable effect on the outcome of the proceeding.").

In the context of Sixth Amendment ineffective assistance of counsel claims that have already been rejected by the state court, the United States Supreme Court has summarized the high bar petitioners then face in a federal 2254 *habeas* petition:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' [466 U.S. 668, 689 (1984)]; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S. Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, *Knowles [v. Mirzayance]*, 556 U.S. [---, ---], 129 S. Ct. [1411, 1420 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ---, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Premo*, 131 S. Ct. at 740. With that standard in mind, the Court now turns to the merits of Barnes' three claims of ineffective assistance of counsel.

### IV. ANALYSIS

### A. Barnes' Ineffective Assistance of Counsel Claims A, B, and C

As an initial matter, it must be emphasized that Barnes pled guilty to serious charges, and admitted guilt to incomprehensibly depraved acts as depicted in the statement of facts summarized above, that resulted in the forty-two (42) year active incarceration sentence now at issue. The United States Supreme Court has recognized that such a guilty plea represents a "break" in the chain of events to which a federal *habeas* petitioner can collaterally challenge. "The focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity." *Tollett v. Henderson*, 411 U.S. 258, 266 (1973). Notably, "[w]hen a criminal defendant has solemnly admitted in open

court that he is in fact guilty of the offense with which he is charged, *he may not thereafter* raise independent claims relating to the deprivation of constitutional rights *that occurred prior to the entry of the guilty plea.*" *Id.* at 267 (emphasis added). In other words, by swearing under oath in open court that he is guilty of the offenses charged, a federal *habeas* petitioner waives a subsequent collateral challenge to any alleged constitutional violations that occurred prior to the plea. The federal *habeas* petitioner may only challenge the "voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel" was below objective standards. *Id.*

Here, in the final order denying Barnes' *habeas* petition, the trial court recognized and reasonably applied this clearly established standard under federal law. *See* ECF No. 6 Ex. 4 at 4. On this basis alone, under *Tollett*, Barnes cannot now collaterally challenge alleged constitutional violations that occurred before his guilty plea, such as an involuntary confession to police in violation of his Fifth Amendment rights, or an unreasonable seizure of his person in violation of his Fourth Amendment rights. However, because Barnes now raises these claims under the Sixth Amendment, and peripherally argues that his trial counsel was ineffective for failing to file various suppression motions prior to the entry of his guilty plea, the Court will liberally construe the instant claims to include that these failures by trial counsel influenced Barnes' decision to plead guilty, even though he does not explicitly make such a claim in the instant Petition. *Cf. Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (articulating the generally accepted rule that prisoner *pro se* pleadings are given the benefit of liberal construction). Accordingly, the Court reviews the reasonableness of the state court's application of *Strickland v. Washington* to Barnes' ineffective assistance of counsel claims brought under the Sixth Amendment. *See Richter*, 131 S. Ct. at 737.

13

The state court determined that Barnes failed to satisfy *Strickland*'s demanding standard on both the "performance" and the "prejudice" prongs. Because the Court would find that the state court did not unreasonably apply *Strickland* to Barnes' claims, the Court would grant the Respondent's motion to dismiss and deny Barnes' petition. *Cf. Premo v. Moore*, 131 S. Ct. 733, 739 (2011); 28 U.S.C. § 2254(d)(1).

## 1. Performance

Barnes advances three grounds of deficient performance by trial counsel, all for failure to file a motion to suppress the following evidence stemming from his October 23, 2008 interview with police: (1) his confession and the fruits of that confession; (2) his DNA, which was allegedly obtained in violation of his Fourth Amendment rights because he did not clearly consent; and (3) other evidence, such as a written statement, drawing of the crime scene, and subsequent DNA evidence. As to these three grounds, the Court must now answer the highly deferential question: "whether there is *any* reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Premo*, 131 S. Ct. at 740. The Court would answer in the affirmative that there is a reasonable argument to be made that Barnes' counsel "was within the 'wide range' of reasonable professional assistance," and therefore it was not unreasonable for the state court to deny his claim on this basis. *Richter*, 131 S. Ct. at 787 (citing *Strickland*, 466 U.S. at 689).

The state court relied on an affidavit from trial counsel to find that filing a motion to suppress any of the above-mentioned evidence would have been frivolous, and as such, counsel was not constitutionally obligated to file such a motion. ECF No. 6 Ex. 4 at 7 (citing *Moody v. Polk*, 403 F.3d 141, 151 (4th Cir. 2005) (holding counsel was not required to file frivolous motions); *Correll v. Commonwealth*, 352 S.E.2d 352, 361 (Va. 1987) (holding counsel had no

duty to object to the admission of a presentence report because it was clearly admissible)). In the

affidavit, which is contained in the state court records provided to this Court, trial counsel stated:

> I would note that I and co-counsel negotiated a plea agreement on Mr. Barnes'
> behalf. Prior to doing so, Mr. Barnes made admissions to us concerning his
> actions in this matter, which required counsel to attempt the negotiation of a
> possible Plea Agreement. We discussed with Mr. Barnes the charge and potential
> defenses at trial, including the likelihood of success of any potential suppression
> motions, and it was Mr. Barnes' decision to accept the Plea Agreement. In my
> view that was a reasonable and responsible decision given the serious nature of
> the charges, and potential sentences, my review of the Commonwealth's
> evidence, and that of Mr. Barnes, and my assessment of the success of any
> potential defenses.

It was not unreasonable for the state court to determine that trial counsel did not provide

constitutionally deficient assistance because counsel was not required to file frivolous motions

and indeed, it appears that counsel instead negotiated a favorable plea agreement for Barnes.

Nonetheless, the Court will address each of Barnes' claims in turn.

First, in Claim A, Barnes claims that trial counsel was ineffective for failing to file a

motion to suppress Barnes' coerced confession, including the fruits of that confession, which

was taken in violation of his Fifth and Fourteenth Amendment rights. ECF No. 1 Ex. 2 at 10-11.

Barnes argues that the totality of the circumstances, under which his confession was given,

render it inadmissible. *Id.* at 11. Specifically, Barnes claims that his confession was involuntary

because he was: told he would be kept indefinitely until things "cleared up;" questioned in the

interview room for three to four hours; given only short breaks; shown gruesome evidence and

photographs from the crime scene; had never been previously arrested, charged, or Mirandized,

nor did he have any prior experience in the criminal justice system; only 17 years and 4 days old

at the time; not explained his constitutional rights; and did not have a lawyer present. Barnes

claims these conditions caused his will to be overborne thereby providing a verbal confession, a

written statement, and drawn crime scene pictures, as well as a DNA sample. *Id.*

The state court determined Barnes was bound by his admission of guilt and other representations made during his guilty plea colloquy, which included waiving his right to further defend himself and declaring that he was satisfied with the performance of his attorneys.[5] ECF No. 6 Ex. 4 at 12. Barnes affirmatively acknowledged that he understood the terms of the plea agreement and that he was satisfied with the performance of his defense counsel. "Q. Now, are you satisfied with the services provided to you by your attorneys up to this point? A. Yes, sir." Tr. Plea at 9 (Sept. 1, 2009).

The state court's application of *Strickland* to this claim was not unreasonable. First, the state court recognized that Barnes was initially charged with capital murder, which carried a much more significant sentence than first-degree murder. Through plea negotiations, his trial counsel was able to get that charge dismissed, in exchange for a guilty plea to first-degree murder. The state court found that any suppression motion could have jeopardized this favorable agreement. ECF No. 6 Ex. 4 at 12. Additionally, the state court found that counsel previously filed a motion to suppress Barnes' confession in the general district court, which proved unsuccessful. *Id.* Counsel decided that such a motion would have similarly failed in circuit court. *Id.* Therefore, it was not an unreasonable application of federal law under *Strickland* for the state court to hold that Barnes failed to establish that counsel acted deficiently in this regard.

Second, in Claim B, Barnes similarly alleges that trial counsel was ineffective for failing to file a motion to suppress the DNA that was obtained from an allegedly illegal search and seizure on October 23, 2008. ECF No. 1 Ex. 2 at 11-12. Barnes claims Detective Robert C. McDaniel took samples of his DNA without proper consent and Barnes' consent to the search

---

[5] The state court found that for each ground of ineffective assistance of counsel raised by Barnes, he ultimately was bound by his decision to enter a guilty plea and stated he understood he was waiving the right to defend himself and was satisfied with the services of his attorneys. ECF No. 6 Ex. 4 at 5 (citing *Anderson v. Warden*, 222 Va. 511, 516, 281 S.E.2d 885, 888 (1981); *United States v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005); *Beck v. Angelone*, 261 F.3d 377, 396 (4th Cir. 2001)).

was "unspecific, equivocal, and ambiguous." *Id* at 12. The state court dismissed this claim because Barnes willingly allowed the detectives to collect a buccal swab of his DNA, telling them, "I mean, it doesn't matter because I already gave you the story so we can just go ahead." ECF No. 6 Ex. 4 at 9. Thus, the state court found that Barnes consented to the search for his DNA. *Id.* Regardless, on October 28, 2008, the detectives obtained a second DNA sample from Barnes pursuant to a valid search warrant based on Barnes' interview and confession just five days earlier. *Id.* Just as for Claim A, any motion to suppress would have been frivolous, and therefore the state court found that trial counsel's performance was not deficient. *Id.* (citing *Correll v. Commonwealth*, 232 Va. 454, 470, 352 S.E.2d 352, 361 (1987)). Moreover, the state court went on to find that failure to file a motion to suppress did not constitute ineffective assistance of counsel because it would have threatened Barnes' favorable plea deal. *Id.* Therefore, this Court finds that it was not unreasonable for the state court to have determined that Barnes failed to satisfy the first prong in *Strickland* because he did not meet his burden of showing that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688-89.

Lastly, in Claim C, Barnes claims that counsel was ineffective for failing to file a motion to suppress the direct and indirect evidence obtained on October 23, 2008 from an unreasonable seizure of Barnes' person in violation of the Fourth Amendment. ECF No. 1 Ex. 2 at 12-13. Barnes alleges he was unlawfully detained when taken to the detective bureau, where he remained for interrogation. *Id.* During this time, he was fingerprinted, gave a confession, provided a written statement, drew pictures of the crime scene, and provided a DNA sample. *Id.* at 24-26. However, based on the trial counsel's affidavit, it was not unreasonable for the state court to find that trial counsel reasonably believed a motion to suppress this evidence would not

17

be successful, mainly because Barnes' "contact with police was a consensual encounter."[6] ECF No. 6 Ex. 4 at 11-14. The state court was not unreasonable in dismissing this claim because Barnes failed to sufficiently allege "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688-89.

Overall, this court would find that the state court's application of the performance prong of *Strickland* was not unreasonable as to the three grounds raised by Barnes, and that under 28 U.S.C. § 2254(d), there is a reasonable argument that defense counsel satisfied *Strickland*'s deferential standard. *Cf. Premo*, 131 S. Ct. at 740.

## 2. Prejudice

For each claim, the state court found that Barnes failed to demonstrate prejudice under *Strickland* and *Hill* because he failed to show that a suppression motion on any of the three grounds would have been successful, and thus, also failed to show that reasonable defendant in his circumstances would have opted to plead not guilty and go to trial instead. See ECF No. 6 Ex. 4 at 5, 7 (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Under *Hill*, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* In the context of a guilty plea, the "prejudice" inquiry still closely resembles the analysis done by courts reviewing ineffective assistance of counsel claims for convictions obtained through trial. Ultimately, the question becomes: but for counsel's alleged errors, would counsel

---

[6] The state court record supports the state court finding that the interview was consensual. Specifically, the record reflects that detectives offered Barnes four breaks during the course of the interview, which included food, coffee, and water. Tr. of Barnes' Statement 38-40, 56-59, 78-79, 115-16 ("Tr. Stmt."). Moreover, before the interview began, detectives allowed Barnes to speak with his mother privately on two separate occasions, and she was present for the entire interview. *Id.* at 3-6. After Barnes' mother initially asked whether Barnes was under arrest and needed a lawyer, Detective McDaniel responded by saying that he couldn't give legal advice, but also advised that at that time, Barnes was not under arrest and stated that he voluntarily came to the police station for the interview. *Id.* 30, 40. The record also reflects that at no time did Barnes or his mother explicitly ask for a lawyer, even though Barnes and his mother contemplated informing or calling "Emily's mom," who assumedly is an attorney. Tr. 39-40, 153.

have recommended pleading not guilty and moreover, would that recommendation have been based on evidence or other external factors that "likely would have changed the outcome of a trial." *Id.* In other words, under *Hill, habeas* petitioners carry the burden of showing that without counsel's deficient performance, they would have not pled guilty, proceeded to trial, and likely have not been convicted at trial. This Court must determine whether this decision by the state court was an "'unreasonable application of' clearly established federal law [under *Strickland* and *Hill*]." *Premo*, 131 S. Ct. at 739; 28 U.S.C. § 2254(d)(1).

Under Claim A, the state court found Barnes failed to demonstrate that a suppression motion would have been successful, and thus failed to show prejudice under *Strickland* and *Hill.* ECF No. 6 Ex. 4 at 12-13 (citing *Johnson v. Tice*, 275 Va. 18, 28, 654 S.E.2d 97 (2008) (where the allegation of ineffectiveness is trial counsel's failure to litigate a constitutional claim, a habeas petitioner must first prove that the constitutional claim is meritorious)). The state court found that Barnes was not in custody during his interview at the police station. *Id.* at 13 (citing *Aldridge v. Commonwealth*, 606 S.E.2d 539, 551-52 (2004)). Barnes willingly went to the police station with his mother in attendance. *Id.* Therefore, it was not unreasonable for the state court to find that Barnes failed to demonstrate prejudice under *Strickland* on Claim A, because this motion to suppress would not have altered the circumstances of Barnes' guilty plea.

Similarly, the state court held that, under Claim B in the instant Petition, the collection of his DNA was admissible because it was pursuant to a valid search warrant. ECF No. 6 Ex. 4 at 9. Accordingly, a motion to suppress Barnes' DNA would not have been successful, and therefore, this application of federal law by the state court was not unreasonable. *Id.* (citing *Tice*, 275 Va. at 28, 654 S.E. 2d at 917 (2008)). Finally, under Claim C, the state court determined Barnes could not show prejudice for failure to file a motion to suppress for evidence stemming

19

from his interrogation as an unreasonable seizure. *Id.* at 7. Barnes was never considered "in custody" during the interview because he came willingly to the police station and was allowed to leave twice with his mother. *Id.* at 7-8. Accordingly, the Court would find that the state court's determination that Barnes failed to satisfy the prejudice prong under *Strickland* was not "an unreasonable application of clearly established federal law," 28 U.S.C. § 2254(d)(1), because the success of any suppression motion was not likely, and a reasonable person in Barnes' position would not have decided to go to trial.

Overall, the Court finds that the state court did not unreasonably apply the prejudice prong of *Strickland* to Barnes' claims. It was not unreasonable for the state court to hold that Barnes failed to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Quite simply, the evidence against Barnes was overwhelming, as summarized above from the Commonwealth's proffer during Barnes' guilty plea. *See supra* at 2-5. The evidence against Barnes included a detailed confession where he recited specific aspects of the crime that could be known only to the killer, a written statement, a bloody shoe print, finger print evidence from the window, and his DNA evidence from the serrated edge of the packing tape, the murder weapon, semen in the victim's bedroom, and the front door handle. Barnes took a favorable plea deal, which substantially reduced the charge (capital murder to first-degree murder) and penalty he faced.

Accordingly, because it was not unreasonable for the state court to find that Barnes failed to satisfy both the performance and the prejudice requirements under *Strickland*, this Court would grant the Respondent's Motion to Dismiss and dismiss Barnes' Petition with prejudice. *Accord Premo*, 131 S. Ct. at 740.

## V. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** the Respondent's Motion to Dismiss, ECF No. 4, be **GRANTED** and Barnes' petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE**.

## VI. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

2. A United States District Judge will make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the Petitioner and counsel of record for the Respondent.

                                        /s/
                                Lawrence R. Leonard
                                United States Magistrate Judge

                                  Lawrence R. Leonard
                                United States Magistrate Judge

Norfolk, Virginia
December 2 , 2013

## CLERK'S MAILING CERTIFICATE

A copy of this Report and Recommendation was mailed on this date to the following:

Robert Lee Barnes, #1416795
Buckingham Correctional Center
P.O. Box 430
Dillwyn, Virginia 23936-0430
*Pro Se* Petitioner

Rosemary V. Bourne, Esq.
Senior Assistant Attorney General
900 East Main Street
Richmond, Virginia 23219
Counsel for the Respondent

_____
Fernando Galindo
Clerk of the Court

By:
    Deputy Clerk
    December 2, 2013

23